615 A.2d 386

**COMMONWEALTH of Pennsylvania**

v.

**Roy DEER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 17, 1992.

Filed Oct. 21, 1992.

322

William C. Kaczynski, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com.

Before WIEAND, DEL SOLE and HESTER, JJ.

DEL SOLE, Judge:

Appellant was convicted in a non-jury proceeding of one count of theft of services in violation of 18 Pa.C.S.A. § 3926. The charge was based upon the Commonwealth's allegation that Appellant unlawfully obtained natural gas from the Equitable Gas Company at his place of business by means of an illegal tap. Following the imposition of sentence which ordered Appellant to serve a period of probation for three years and directed that he pay court costs and restitution in the amount of $11,000, he filed this appeal.

The challenges made on appeal are to the sufficiency of the evidence offered in support of Appellant's conviction, and to the evidence elicited in support of the court's conclusion regarding the amount of gas diverted to the premises. Appellant also claims that the statutory presumption found in 18 Pa.C.S.A. 3926(d)(1) should be declared unconstitutional.

We begin by addressing the constitutional claim made by Appellant. The statutory inference in question provides:

**(d) Inference from using nonmetered utility service.—** Any person having possession of or access to the location of a public utility meter or service measuring device which has

been avoided or tampered with so as to inhibit or prevent the accurate measurement of utility service and who enjoys the use of or receives the benefit from the public utility service intended to be metered or measured by the public utility meter or measuring device so avoided or tampered with may be reasonably inferred to have acted to avoid or tamper with the public utility meter or measuring device with the intent to obtain the public utility service without making full compensation therefor.

18 Pa.C.S.A. 3926(d).

■ Appellants seeks a declaration that this statute is unconstitutional because, he contends, it allows a trial court to substitute proof of his guilt with a presumption. In support of his claim Appellant cites to a Court of Common Pleas decision from Centre County, *Commonwealth v. Larocca,* 25 Pa.D. & C.3d 620 (1981). Therein the defendant was charged with improperly obtaining electrical service by tampering with an electrical meter which serviced an apartment in State College rented by the defendant and three other persons. On two occasions a meter reader found the electric meter turned upside down, causing it to run backward reducing the recorded usage of electrical service. Because the defendant was the listed subscriber for the electrical service, the Commonwealth sought to rely on the statutory inference to establish the defendant's guilt of theft of services. The court refused to allow the inference to apply to the defendant based upon his status as a subscriber. The court stated "we feel that the statutory inference ignores the quasi-contractual duty of the 'roommates' to defendant, and the reality that they too benefit from the inaccurate measurement of the utility usage." *Id.* at 624. Because the court found that the statute did not recognize that others who benefitted from the service may be responsible for the theft, it ruled that the statutory inference is "irrational" and "arbitrary." *Id.*

Unlike the court in *Larocca* we conclude that the statute does recognize that more that one person may be the beneficiary of service. The statute simply allows an inference where such a beneficiary has access to a meter which was tampered

with to prevent accurate measurement. The fact that others may also benefit will allow this inference to apply equally to them. It remains, however, the Commonwealth's responsibility after application of the inference to establish beyond a reasonable doubt that the defendant committed the theft. *See Commonwealth v. Gallagher*, 400 Pa.Super. 71, 582 A.2d 1349 (1990) (where the defendant only lived at a residence where utility service was tampered with intermittently and up to ten others lived there during the relevant time, there was insufficient evidence to sustain a conviction of theft of services.) The absence of proof may render a conviction unconstitutional, but the inference itself, sanctioned by statute, is not.

An inference has been defined as "no more than a logical tool enabling the trier of fact to proceed from one fact to another." *Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991 (1983) citing *Commonwealth v. Shaffer*, 447 Pa. 91, 105, 288 A.2d 727, 735 (1972) *cert. denied*, 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972). Where the inferred fact is "more likely than not to flow from the proved fact on which it is made to depend" the evidentiary inference will pass constitutional scrutiny. *Id.* We find that the inference challenged in the present case is able to meet the "more likely than not" standard. Where an individual has access to or possession of a measuring device, and the device has been shown to have been tampered with so as to inhibit or prevent the accurate measurement of utility service, and where this same individual enjoys the use or receives the benefit of the utility service which has been interrupted, then it is "more likely than not" that this individual tampered with the measuring device with the intent of obtaining service without making full compensation for it.

In cases where the sole evidence of guilt or an element of the offense is inferential, "then the inferred fact must follow beyond a reasonable doubt from the proved facts." *Commonwealth v. Jones*, 242 Pa.Super. 471, 364 A.2d 368, 372 (1976). In other cases, the inference is but one piece of circumstantial evidence designed to prove guilt. "The focus of our inquiry then becomes, as always, whether the totality of the evidence,

together with all *reasonable* inferences, is sufficient in law to prove the defendant's guilt beyond a reasonable doubt." *Id.* With respect to the inference to be drawn from the possession of recently stolen goods it has been stated:

"[N]one of [the cases] holds that it is unconstitutional to infer from possession of stolen goods that the possessor knew they were stolen. Rather, ... a conviction either based upon that inference alone, or reached without due regard to evidence of surrounding circumstances, cannot stand, because it is based on less than proof beyond a reasonable doubt. Such a conviction must be reversed, because proof beyond a reasonable doubt is a requirement of due process. Thus, the inference that the possessor of recently stolen goods knew they were stolen is not an 'unconstitutional' inference ...; rather it is an inference that, if misused, will in certain cases lead to an unconstitutional result."

*Id., quoting Commonwealth v. Simmons,* 233 Pa.Super. 547, 556–557, 336 A.2d 624, 629 (1975).

■ With this background we turn to an examination of the evidence offered in this case and view it in a light most favorable to the Commonwealth. The property in question was owned by an individual who resides in Florida. It was leased to a Susan McLean who in turn in the early 1980's leased the property exclusively to Appellant, who under the terms of the lease was responsible for all utility payments associated with the building. Electrical service for the subject premises was initiated in May of 1982 in the name of Roy Deer, Inc. and remained in service until October 1989. A Duquesne Light employee testified that very little electricity was used at the subject premises from the turnon date until October of 1984. From that time until 1987 electricity usage increased substantially and peaked seasonally, which was consistent with the use of a furnace or seasonal heating equipment. Despite the evidence of electrical use consistent with the heating of a building, an Equitable Gas employee testified that in 1983 gas service to the property was terminated. The meter was turned off, taken out and a plug was put in the

pipe. There was testimony that the defendant used the building for storage during the years of 1982 through 1987. In 1985 the building was used for the detailing of automobiles and later for a towing business, which was subsequently transferred to an adjacent building. The names of these businesses associated with the subject property were Roy Deer's Auto Body and Roy Deer, Inc.

Beginning on November 19, 1987 Equitable Gas began a surveillance of the building and on three separate occasions gas vapors emanating from a flue were observed. After acquiring Mrs. Deer's authorization for an inspection on December 3, 1987, employees of Equitable Gas discovered on the premises two large overhead gas furnaces, one which was in operation at the time. The thermostat was set at 90 degrees, but the actual temperature inside was approximately 72 degrees. No meter was discovered but the inspection disclosed an unauthorized connection into a main gas line directly in front of the building. The connection was approximately 25 feet in length and it was necessary to use a backhoe to excavate it approximately 3 feet below ground surface. A separate gas line had also been installed inside the premises to carry the gas to the furnace, which line was visible to those having access to the inside of the building. Also found installed inside the building was an unvented regulator. Testimony indicated that regulators are usually installed outside of a building for safety reasons.

With respect to this evidence the trial court noted that it is true that no witness saw appellant tamper with the bypass. However in view of the fact that he was in exclusive control of the premises, operated a business there, negotiated the terms of the lease, expanded his operations to an adjacent property and was present at the premises regularly, the court determined that this evidence and the statutory inference supported Appellant's conviction. We agree with the trial court's assessment that the facts offered by the Commonwealth prove Appellant engaged in an elaborate scheme to procure natural gas illegally. In reviewing the sufficiency of the evidence the standard test is "equally applicable to cases where the evi-

dence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Gallagher*, 400 Pa.Super. 71, 74, 582 A.2d 1349, 1350 (1990), *citing Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988). We find that sufficient evidence existed in this case.

We also conclude that the trial court had ample evidence on which to base its finding that approximately $11,000 worth of gas was diverted throughout the relevant years. In addition to the testimony regarding increased electrical usage during winter months consistent with the use of a blower on a gas furnace, the Commonwealth offered expert testimony from a development engineer employed by Equitable gas. He stated that his calculations of usage took into consideration a number of factors including the size of the building, type of construction, amount of insulation, number of windows, number of doors, average winter temperatures and the size of the furnace found working on the premises during the inspection. His calculations were also premised upon an estimate of heating the building at 70 degrees, which he considered a typical office temperature. Utilizing the estimate volume of gas consumed throughout the relevant period and the price of gas, the witness calculated the monetary value of such usage.

The trial court as factfinder was responsible for evaluating the credibility of the Commonwealth's witnesses. *Commonwealth v. Curry*, 318 Pa.Super. 490, 465 A.2d 660, 662 (1983). In accepting their testimony the court was presented with ample proof on which to base a conclusion as to the value of the diverted utility service. Finding no abuse of discretion or error of law, we affirm Appellant's convictions and Judgment of Sentence.

Judgment of Sentence affirmed.