J-S21015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GABRIEL M. CRUZ, | |
| Appellant | No. 611 EDA 2014 |

Appeal from the Judgment of Sentence January 13, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CR-51-CP-0011957-2011

BEFORE:  BOWES, JENKINS, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 12, 2015**

Gabriel M. Cruz appeals from the January 13, 2014, judgment of sentence of thirty to sixty years imprisonment, which was imposed following his convictions for attempted murder, aggravated assault, and conspiracy to commit aggravated assault.[1]  We affirm.

The facts as recited by the trial court are as follows:

> On May 9, 2010, at approximately 8:15 p.m., Felix Santos was rushed to Temple University Hospital after suffering multiple stab wounds to the chest and torso.  Due to extreme blood loss and the resulting loss of oxygen to the brain, he was put on life support, and is expected to remain in a vegetative state for the duration of his life.  The stabbing occurred as a result of a dispute over a parking space located on the 700 block of West Butler Street in Philadelphia.  The detectives recovered a bloody kitchen knife belonging to the complainant on the porch of 712

---

[1] The jury acquitted Appellant of conspiracy to commit murder.

* Retired Senior Judge assigned to the Superior Court.

West Butler Street. The complainant resided at 712 West Butler Street with his wife and children.

On the day of the stabbing, Mr. Santos had returned home from shopping with his wife and two children at approximately 6:30 p.m., and temporarily parked his car in front of a fire hydrant. When the parking spot directly in front of his house became available shortly thereafter, Mr. Santos' eighteen-year-old son moved their car into that spot. Upon viewing the parked car, Mr. Santos' neighbor, who is the mother-in-law of the Defendant, approached him and insisted he move his car. The interaction became increasingly hostile and ended when the neighbor spit in the complainant's face. The complainant then returned to his house with his family and called the police. A few minutes later the neighbor's son, and brother-in-law of the Defendant, co-defendant Jose Torres, began knocking on Mr. Santos' porch door threatening to kill him. When the complainant offered no response to Torres' threats, Torres got a shovel and proceeded to repeatedly hit the complainant's car with it. Several members of Torres' family were outside their house during this altercation. Upon hearing the car alarm, Mr. Santos took his child's baseball bat and approached Torres outside. His wife and children followed him. Mr. Santos struck Torres with the bat. The police arrived and instructed everyone to return to their residences. Before the police left, the complainant's other son returned home from the store with his uncle. He testified to seeing ten people outside on the street, including the Defendant.

Shortly after returning to his residence, Mr. Santos received a call from his cousin, who resided across the street at 711 West Butler, concerning Mr. Santos' fourteen-year-old nephew. Co-defendant Torres and several other unidentified men had attacked Mr. Santos' nephew outside of the house because they knew he was a member of the complainant's family. The complainant's nephew also resided at 711 West Butler and had been on his way home from the park on his bike. After receiving this telephone call, Mr. Santos, his wife, his brother, and his two sons went out of the house towards the street. At this point, a "melee" erupted between the Torres family and the Santos family.

Trial Court Opinion, 6/30/14, at 2-3.

Christina Santos, the victim's wife, testified that Appellant's wife grabbed her by the hair and threw her down to the ground. While restrained, she saw her husband running up the porch steps with Jose Torres, Appellant, and Khalief Green in pursuit. Mrs. Santos watched as Appellant held her husband's arms while Torres stabbed him multiple times. Mr. Santos's son Delmy, who was fourteen years old at the time of the incident, placed Appellant at the scene during the first disturbance quelled by police. Delmy saw his father on the telephone and then followed him as he ran outside with a baseball bat. He witnessed his cousin, aunt, and older brother on the ground being assaulted and his father striking an unknown man with the bat. Delmy recounted how an unidentified man threatened to kill him with a knife. The last thing he remembered prior to waking up in an ambulance was being punched in the face by Appellant.

Carmen Santos, the victim's sister, saw Appellant beat her fourteen-year-old son. When she tried to intervene, he attacked her. She testified that Mr. Santos came to her defense and swung the bat at Appellant, knocking him down, but Appellant took the bat and hit the victim on the head with it. Carmen witnessed Appellant punch the victim's son in the head. She also saw her brother being restrained by Appellant on his own porch while Torres stabbed him. She did not tell police that day that she

witnessed the stabbing for fear of retaliation. She identified the perpetrators four days later after witnessing several members of the Torres family celebrating that they had killed her brother.

Mr. Santos's oldest son, eighteen-year-old Felix, identified Appellant and co-defendant Green as the men restraining his father, but he did not actually see the stabbing. He confirmed his aunt's testimony that Appellant fled toward a red car and added that Appellant had a shiny object in his hand that was about three or four inches long.

As Philadelphia Police Officer Roberto Luciano arrived, he saw a red Buick carrying three or four passengers fleeing the scene. He was unable to stop the vehicle. The officer found Mr. Santos unconscious on the porch steps of his home and arranged for another responding officer to transport him to the hospital.

Approximately one week later, witnesses identified Appellant from photographs. The red car was identified as a 2002 Buick LeSabre belonging to Appellant's wife. After an arrest warrant was issued for Appellant, he turned himself in to police and provided a statement in which he admitted being at the location of the fight, but denied that he had any contact with any males.

The jury found Appellant guilty of attempted murder, aggravated assault, and conspiracy to commit aggravated assault. He was sentenced

initially on September 26, 2013, to a term of imprisonment of twenty to forty years for attempted murder, ten to twenty years for aggravated assault, and ten to twenty years for conspiracy, with all sentences to run consecutively. Appellant filed a motion for reconsideration of sentence on October 5, 2013, which was denied on October 8, 2013. On October 25, 2013, the trial court granted a motion to reconsider the sentence and conducted a hearing.

On January 14, 2014, the court concluded that merger applied to the convictions for attempted murder and aggravated assault. Hence, it resentenced Appellant to twenty to forty years incarceration for attempted murder and a consecutive ten to twenty year sentence of imprisonment on the conspiracy count. Appellant filed a post-sentence motion challenging the weight and sufficiency of the evidence and the discretionary aspects of his sentence. Relief was denied. Appellant appealed and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant presents two issues for our review:

A. Was the evidence presented by the prosecution sufficient enough to support a conviction for the crime of attempted murder and aggravated assault?

B. Did the trial court commit an abuse of discretion by imposing upon the Appellant a manifestly excessive sentence of thirty (30) to sixty (60) years?

Appellant's brief at unnumbered 6.[2]

Appellant's first issue presents a challenge to the sufficiency of the evidence of attempted murder and aggravated assault. Our standard of review is well settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Kelly*, 102 A.3d 1025, 1028 (Pa.Super. 2014) (*en banc*).

Appellant was charged and convicted of attempted murder of the first degree, 18 Pa.C.S. § 901. That section provides:

> (a) Definition of attempt. -- A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

"A criminal homicide constitutes murder in the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). We held in

---

[2] The Commonwealth did not file a brief.

*Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa.Super. 2005), that "for the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal." *Accord Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008). The specific intent to kill can be inferred from the circumstances surrounding an unlawful killing or from the fact that the accused used a deadly weapon to inflict injury to a vital part of the victim's body. *Commonwealth v. Geathers*, 847 A.2d 730, 737 (Pa.Super. 2004); *accord Commonwealth v. Sattazahn*, 631 A.2d 597 (Pa.Super. 1993) (specific intent to kill may be inferred from use of a deadly weapon to inflict injury to a vital part of the victim's body).

Appellant argues that the facts of the instant case do not establish that he had a specific intent to kill Mr. Santos. He maintains that the incident was a brawl, there was no evidence that Appellant and his co-defendants intended to kill, and that there was no proof that he was aware that his co-defendant had a knife while he was restraining the victim.

The trial court correctly instructed the jury that, in order to convict for attempted murder, the jury would have to find that Appellant and his co-defendants stabbed Mr. Santos with the specific intent to kill him. N.T., 9/28/12, at 119. The jury found Appellant guilty of attempted murder. The

trial court found the evidence that Appellant aided his co-defendant in using a deadly weapon on Mr. Santos's heart sufficient to support the jury's finding of a specific intent to kill. Appellant counters that there was no evidence that his co-defendant targeted the victim's heart and that it was just as likely that his intent was merely to injure him.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find sufficient evidence to support the attempted murder conviction. Appellant physically restrained the victim to assist his co-defendant as he stabbed the victim in the chest area three times with a knife. The treating trauma surgeon testified that the stab wounds were located near the armpit, the chest, and the abdomen. One of the stab wounds injured the victim's heart, and another nicked his bowel. Evidence of use of a deadly weapon multiple times on a vital part of the victim's body was legally sufficient to support the attempted murder conviction.

Appellant next contends that the evidence was insufficient to convict him of aggravated assault. Appellant does not dispute that serious bodily injury was inflicted herein and that even reckless conduct is sufficient to sustain the aggravated assault conviction.[3] However, he maintains that

---

[3] The victim, Mr. Felix Santos, was hospitalized from May 9, 2010 until June 21, 2010, when he was sent to an LTAC unit due to the fact that he was on a
*(Footnote Continued Next Page)*

there is no evidence of intent to cause serious bodily injury to the complainant because he did not possess the knife used to assault the complainant.

The fact that Appellant did not personally wield the knife does not relieve him from criminal liability as an accomplice. There was ample evidence that Appellant restrained the victim to facilitate the stabbing by his co-defendant. Having already concluded that there was evidence of specific intent to kill to support the attempted murder conviction, we need not go further. The specific intent to kill necessarily includes the intent required to establish aggravated assault, *i.e.*, the intentional, knowing, or reckless infliction of serious bodily injury. ***See Commonwealth v. Anderson***, 650 A.2d 20, 24 (Pa. 1994) (holding intent necessary to establish specific intent to kill greater than and necessarily includes intent required to establish aggravated assault). This claim is without merit.

Appellant's second issue is a challenge to the discretionary aspects of his sentence. Acknowledging that he is not entitled to review as of right, we note that he filed both a post-sentence motion and a Pa.R.A.P. 1925(b) statement preserving the issue. Two additional requirements must be met before we review the challenge on the merits. He must set forth in his

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

breathing machine. He sustained a hypoxic brain injury, and at the time of sentencing, Mr. Santos remained unconscious and in a vegetative state.

appellate brief a Pa.R.A.P. 2119(f) statement of reasons for allowance of appeal and demonstrate "that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa.Super. 2014). We evaluate whether a substantial question has been raised on a case-by-case basis. *Id*.

Appellant's brief contains the concise statement. He claims that his sentence was excessive and that the trial court failed to explain how it was the least stringent one "adequate to protect the community and to serve the rehabilitative needs of the public." Appellant's brief at unnumbered 11. Since Appellant has asserted more than a bald excessive sentence claim, we find he has raised a substantial question. *See Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa.Super. 2015) (finding substantial question where excessive sentence claim was made in conjunction with assertion that the court did not consider mitigating factors). We now turn to the merits.

In reviewing a sentence, we are highly deferential to the trial court.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

Appellant contends that the thirty to sixty year aggregate sentence of imprisonment was manifestly unreasonable. He alleges that the trial court did not individualize his sentence or place adequate reasons on the record to justify the length of the sentence. While conceding that the sentence is within the statutory maximum, and hence legal, Appellant levels criticism against the court for focusing too heavily on the injuries of the victim, rather than the other 42 Pa.C.S. § 9721 factors such as the public's need for protection and the defendant's need for rehabilitation.[4]

In sentencing beyond the aggravated range, the trial judge must explain why this particular offense is more severe than the normal crime of this type. *Commonwealth v. Caraballo*, 848 A.2d 1018, 1020 (Pa.Super. 2004). The trial court explained that the victim herein sustained more than

---

[4] We note that the trial court stated in its Rule 1925(b) opinion that Appellant was convicted of conspiracy to commit murder, which carries an offense gravity score ("OGS") of fourteen. Trial Court Opinion, 6/30/14, at 13. It added that, with a prior record score of five, offenses designated with an offense gravity score of fourteen carry a sentence range of sixteen years to the maximum allowed by statute, which was not more than forty years. *Id*. (citing 18 Pa.C.S. § 1102(c)). It then imposed what it characterized as an aggravated range sentence of ten to twenty years on the conspiracy charge.

Appellant was convicted of conspiracy to commit aggravated assault, rather than conspiracy to commit murder. N.T., 9/28/12, at 141. Conspiracy to commit aggravated assault carries an OGS of ten. With a prior record score of five, the standard range is sixty to seventy-two months, plus or minus twelve months. Appellant, however, does not challenge herein the trial court's utilization of the incorrect OGS.

the serious bodily injury usually associated with these offenses as Mr. Santos was brain dead and sustained on life support. Additionally, the court demonstrated its knowledge of Appellant's role in the events resulting in his convictions. The court had the opportunity to observe Appellant throughout trial and consider the remarks of his family members who spoke on his behalf at the first sentencing hearing. At that hearing, there was an on-the-record discussion of the applicable sentencing guidelines and Appellant's prior record.

At the resentencing, the court stated on the record that it relied upon a presentence report, a mental health evaluation, arguments of counsel, and the prior sentencing hearing in arriving at its sentence. N.T. Sentencing, 1/13/14, at 6. "When, as here, the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." *Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa.Super. 2014). For these reasons, Appellant's discretionary sentencing challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/12/2015