653 A.2d 35

**COMMONWEALTH of Pennsylvania**

v.

**Joseph James DONNELLY, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1994.

Filed Jan. 24, 1995.

---

Linda F. Gerencser, Asst. Public Defender, Lancaster, for appellant.

Joseph C. Madenspacher, Dist. Atty., Lancaster, for Com., appellee.

Before DEL SOLE, BECK and CERCONE, JJ.

DEL SOLE, Judge:

Joseph James Donnelly appeals from the judgment of sentence entered May 17, 1994 following a guilty verdict by a jury for murder in the first degree. 18 Pa.C.S.A. § 2502(a). Since the jurors were deadlocked with regard to the penalty phase of the proceedings, the trial court discharged the jury and imposed a sentence of life imprisonment. This timely appeal was filed. We affirm.

We note that after the verdict was entered, Appellant did not request post-sentencing relief. Under new Rule 1410 of the Pennsylvania Rules of Criminal Procedure, effective for cases where the determination of guilt occurs after January 1, 1994, all requests for relief from the trial court shall be consolidated in a post-sentencing motion. Issues raised before or during trial are considered preserved for appeal whether or not a post-sentencing motion has been filed containing those issues. The trial court, however, upon receipt of the notice of appeal in this case, did not direct Appellant to file a concise statement of the matters com-

plained of on appeal pursuant to Rule of Appellate Procedure 1925(b), and, as a result, the trial court did not file an opinion addressing these matters. We stress that the trial court must comply with Rule 1925 even though the filing of post-sentencing motions is optional. We will consider Appellant's claims in the interest of judicial economy and since the issues are reviewable *in this case* without a trial court opinion.

First, Appellant challenges the sufficiency of the evidence. "In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt." *Commonwealth v. Rollins,* 525 Pa. 335, 339, 580 A.2d 744, 746 (1990). We also must determine whether the evidence would allow the trier of fact to find every element of the crimes proven beyond a reasonable doubt. *Commonwealth v. Woods,* 432 Pa.Super. 428, 638 A.2d 1013 (1994). "[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [trier of fact] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Jones,* 431 Pa.Super. 475, 478, 636 A.2d 1184, 1186 (1994). The trier of fact is free to believe all, some or none of the evidence in a criminal trial. *Woods, supra,* 432 Pa.Super. 428.

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). The Commonwealth must also establish that a person was unlawfully killed, that the accused did the killing, and that the killing was committed with malice aforethought, in addition to premeditation and deliberation. *Commonwealth v. Mitchell,* 528 Pa. 546, 599 A.2d 624 (1991). With these statements of the law in mind, we begin our review.

The evidence shows that Appellant was at the victim's residence at the approximate time that the victim was

murdered. Appellant had the type of firearm which was used to kill the victim. Appellant also made statements which were false and inconsistent such as, he sold a gun to a Hispanic, but he did not know the person's name or address. He also told police that he knew the victim's name but could not remember him; however, at trial he testified that he partied with the victim and was at his home every day during the summer of 1993. Appellant told police that he rode his bike to New York and then admitted that he took the victim's car to New York and subsequently travelled under a false name to San Francisco. Fabrication of false and contradictory statements by the accused is evidence from which a jury may infer that they were made with the intent to mislead police and are indicative of guilt. *Commonwealth v. Carbone*, 524 Pa. 551, 574 A.2d 584, opinion amended on denial of reargument, 526 Pa. 226, 585 A.2d 445 (1990). Consciousness of guilt may also be reasonably inferred from the fact that the accused attempts to elude the police. *Commonwealth v. Madison*, 501 Pa. 485, 462 A.2d 228 (1983).

Furthermore, in first degree murder cases, Pennsylvania case law has held that premeditation and deliberation is established when there is a conscious purpose to cause death. *Commonwealth v. Sattazahn*, 428 Pa.Super. 413, 631 A.2d 597 (1993). We also note that:

The cases further hold that the specific intent to kill "can be formulated in a fraction of a second." A specific intent to kill can be inferred from the circumstances surrounding an unlawful killing. Because a person generally intends the consequences of his act, a specific intent to kill may be inferred from the fact that the accused used a deadly weapon to inflict injury to a vital party of the victim's body. (Citations omitted).

*Id.* 428 Pa.Super. at 422, 631 A.2d at 602.

Instantly, Dr. Ross' autopsy revealed that the victim was shot once in the back of the head and once in the neck while he was lying on his left side. Appellant had the means and the opportunity to kill the victim as he was seen at the victim's home near the time when the murder took place. In addition,

he possessed a firearm similar to the one used to kill the victim, he admitted to stealing the victim's car and fleeing the Lancaster area after the murder, and he made inconsistent statements regarding his familiarity with the victim. Viewing these facts in a light most favorable to the verdict winner, we find that the evidence presented is sufficient to establish, beyond a reasonable doubt, all elements of murder in the first degree including the specific intent requirement.

Second, Appellant claims that the trial court erred by admitting into evidence inadmissible hearsay statements made by the victim concerning his intention to confront the defendant. Commonwealth witnesses Eric Hatton and Mark Erb both testified that the victim told them, shortly before the murder, that he intended to confront Appellant about coming to his home too often and was going to tell him to remove his belongings from his home. Defense counsel objected to this testimony as hearsay but the trial court overruled the objection on the basis of the state of mind exception to the hearsay rule.

Our supreme court in *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978), stated that:

> The state of mind exception of the hearsay rule is well established ... "We admitted such testimony on the ground that the declarations of the deceased indicated an existing intent or state of mind of the deceased-declarant and, since such declarations were made in a 'natural manner' and were material and relevant, their admission could be justified as an exception to the hearsay rule." While it is true that such evidence will not be received as proof of the conduct of the accused (rather it relates to the state of mind of the declarant) the burden has been traditionally placed upon the accused to request a clarifying instruction....

*Riggins*, 478 Pa. at 234, 386 A.2d at 526. Similarly, in *Commonwealth v. Lowenberg*, 481 Pa. 244, 392 A.2d 1274 (1978), the statement of a murdered 82 year old woman, which was offered to establish the intention of the deceased to see the defendant and confront him concerning a financial matter she considered serious, was properly admitted because it came

within the state of mind exception to the hearsay rule. The supreme court reasoned that intention, viewed as a state of mind, is a fact and is usually made known verbally or in writing. In many cases, it is impossible to prove intention apart from a separate statement which makes the state of mind exception necessary. This exception is justified because the circumstances under which the declarant's comment is made suggest that it accurately reflects the declarant's state of mind and there was an absence of a motive to deceive. *Id.*

In the present case, Appellant argues that Mark Erb and Eric Hatton's testimony was presented solely for the truth of the matter asserted. He believes that the statements were to show that he had a confrontation with the victim, and, as a result, he had a motive to kill him. We disagree. The two statements regarding the victim's intention to confront Appellant were not offered for the sole purpose of showing that a confrontation took place. The statements reveal the victim's thoughts and also indicate that Appellant did not have a place to stay which is one reason why he was upset. This is corroborated by the testimony of Mark Erb who allowed Appellant to stay with him one night but refused to let him stay any longer. Erb also testified that, during his conversation with Appellant, he expressed his intention to go back to the victim to ask one more time for a place to stay. Karen Bitner also testified that two days before the murder Appellant was very upset and crying because he did not have a place to stay and she would not let him stay with her. Thus, the testimony was relevant and the court did not err by admitting the testimony regarding the victim's state of mind as an exception to the hearsay rule.

Third, Appellant argues that he should be awarded a new trial on the grounds that the prosecutor made an improper argument to the jury. Appellant complains that the prosecutor distorted two statements by Commonwealth witnesses in his closing argument. On direct examination, Mark Erb was asked about the conversation he had with Appellant when he refused to allow him to stay with him and Appellant mentioned the victim's name. Erb testified, "Yes; he put that

in and he also said he wanted to go back and talk with Lou and ask one more time to, you know. He had to have a place to stay and he thought Lou might still do it for him." (T.T. 5–11–94 at 519). In closing, the prosecutor rephrased this testimony as, "this defendant told Mark Erb, Lou is my last resort. If it doesn't work out with Lou, I'm going to New York City. Lou is my last resort." (T.T. 5–16–94 at 1181).

Detective Arnold testified that Appellant told him that a San Francisco detective mentioned the victim's name to him, and Appellant told the detective, "I knew that person but now I can't remember who that person was." (T.T. 5–12–94 at 810). In his closing statements, the prosecutor paraphrased this testimony as follows:

The following day, or one or two or three days later, whatever, at the time Detective Arnold of the Lancaster City Police shows up, the agency actually investigating the murder, he meets with the defendant and the defendant at that time says, you know, the other inspector ran a name by me but I can't remember the name.

T.T. 5–16–94 at 1189.

"When reviewing averments of prosecutorial misconduct in the form of improper remarks to the jury, the remarks of the prosecutor 'must be evaluated in the context in which they occurred.'" *Sattazahn, supra,* 428 Pa.Super. 413, 631 A.2d at 609. In general, statements to the jury by the prosecutor do not constitute reversible error unless the unavoidable effect of the comments would be to prejudice the jury, forming in their minds fixed bias or hostility toward the accused so that they could not weigh the evidence in an objective manner and render a trustworthy verdict. *Id.* The prosecutor, when making closing arguments, is permitted wide latitude and may use reasonable oratorical flair. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991).

Read within context, the prosecutor's statements to the jurors did not have the unavoidable effect of depriving Appellant of a fair trial. Although the prosecutor's statements were not verbatim, they certainly were not distortions warranting a

new trial. The arguments were well within the ambit of fair comment and supported by the evidence.

Judgment of sentence affirmed.