COMMONWEALTH of Pennsylvania,
Appellee

v.

Tajjideen M M. WHITAKER,
Appellant.

Superior Court of Pennsylvania.

Argued July 12, 2011.
Filed Sept. 26, 2011.

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, and J. Charles Gerbron, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., MUSMANNO, and FITZGERALD *, JJ.

OPINION BY STEVENS, P.J.:

Appellant Tajjideen Whitaker (hereinafter "Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on July 22, 2009, at which time Appellant received a mandatory sentence of life imprisonment without the possibility of parole following his conviction of first-degree murder [1] along with a concurrent sentence of nine (9) months to twenty-four (24) months in prison for his conviction of possessing an instrument of crime.[2] Upon our review of the record, we affirm.

---

* Former Justice specially assigned to the Superior Court.

1. 18 Pa.C.S.A. § 2502.

2. 18 Pa.C.S.A. § 907(a).

3. Appellant, born on October 9, 1989, was seventeen at the time of the incident.

4. In summary, the testimony pertained to the brutal beating death of the victim who had been repeatedly struck on the head with a

Following a jury trial which began on June 25, 2009, Appellant was convicted of the aforementioned crimes on July 6, 2009.[3] In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court provides a detailed description of the testimony presented during trial. As such, we will not detail the factual history herein and, instead, incorporate the trial court's rendition of it by reference.[4] See Trial Court Opinion filed 11/23/10, at 1–11.[5]

Appellant filed a timely notice of appeal *pro se* on August 20, 2009. Counsel was appointed, and the trial court ordered Appellant to file a concise statement of errors complained of on appeal on August 26, 2009. Following a motion of counsel for an extension of time within which to file Appellant's statement, the trial court provided that it be filed on or before March 15, 2010.

■ Appellant filed his Pa.R.A.P. 1925(b) statement on March 4, 2010, wherein he raised six (6) issues.[6] In his brief, Appellant presents the following two issues for our review:

I. Did the trial court err in imposing a life sentence without parole for the crime of 1st Degree Murder when [Appellant] was 17 years old child [sic] at the time of the alleged incident[?] Is the imposition of this sentence a violation of the [f]ederal and [s]tate constitutional bans against cruel and unusual punishment?

hammer and stabbed multiple times in the chest with a sword on September 10, 2007.

5. We have assigned these page numbers to the trial court opinion, as the original was not paginated.

6. Though the Pa.R.A.P. 1925(b) statement contains eight numbered assertions, in the final two Appellant reserves his right to supplement the statement.

II. Was the evidence insufficient to establish specific intent to kill? Did the Commonwealth fail to establish the *mens rea* element of the crime of 1st Degree Murder beyond a reasonable doubt? [7]

Brief for Appellant at 2.

 In support of his first issue, Appellant avers the trial court erred when it imposed a life sentence without the possibility of parole upon him. Appellant reasons that such sentence is unconstitutional as it constitutes cruel and unusual punishment under both the federal and Pennsylvania constitutions and violates his due process rights in light of the fact that he had been seventeen years old at the time of the offense. Appellant relies upon *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), for the proposition that as the Supreme Court struck down a juvenile's death sentence therein, a juvenile's sentence of life imprisonment without the possibility of parole must also constitute cruel and unusual punishment under the federal and Pennsylvania constitutions. Brief for Appellant at 6.

In *Roper*, the United States Supreme Court held that the Eighth and Fourteenth Amendments prohibited the execution of individuals who were under the age of eighteen at the time they committed capital crimes; nevertheless, as the Commonwealth notes in its brief, in doing so the Supreme Court stated that "the punishment of life imprisonment without the possibility of parole is itself a severe sanction, in particular for a young person." *Roper*, 543 U.S. at 572, 125 S.Ct. at 1196. Indeed, the Supreme Court vacated the death penalty sentence and imposed a sen-

tence of life imprisonment without the possibility of parole upon the defendant therein, thus acknowledging this sentence is a sufficient alternative to capital punishment. Moreover, in *Commonwealth v. Wilson*, 911 A.2d 942, 946 (Pa.Super.2006), this Court specifically noted that the ruling in *Roper* "bars only the imposition of the death penalty in cases involving juvenile offenders" and "does not affect the imposition of a sentence of life imprisonment without parole."

Appellant further notes that in *Graham v. Florida*, —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the United States Supreme Court held that "the imposition of life in prison without the possibility of parole is unconstitutional when applied to juveniles for non-homicide offenses." Brief for Appellant at 5–6. Recently, this Court held that the Post Conviction Relief Act (PCRA) exception to the one-year limitation period for the filing of a post-conviction petition for an after-acquired constitutional right did not apply to a defendant's fourth PCRA petition. *Commonwealth v. Ortiz*, 17 A.3d 417 (Pa.Super.2011). In doing so, we reasoned that the appellant's attempt to invoke an exception to the PCRA timeliness requirements by specifically relying upon *Graham* can afford him no relief because, unlike in *Graham*, the appellant had been a juvenile when he committed the crime of homicide and had been sentenced to life in prison without the possibility of parole. *Commonwealth v. Ortiz*, 17 A.3d 417, 421–422 (Pa.Super.2011). Similarly, in the matter *sub judice*, Appellant has received a sentence of life imprisonment without the possibility of parole following his conviction of first-

---

**7.** Appellant's first argument in his brief combines arguments four and five which he raised in his Pa.R.A.P. 1925(b) statement. The remaining three issues Appellant had included in his concise statement of the errors complained of on appeal have been waived

for his failure to develop them in his brief. *See Commonwealth v. Bullock*, 948 A.2d 818, 823 (Pa.Super.2008) (stating an issue identified on appeal but not developed in an appellant's brief is abandoned and, therefore, waived).

degree murder. In light of *Ortiz, supra,* we find Appellant's claim his sentence constitutes cruel and unusual punishment is without merit.

■ We reach the same conclusion with regard to Appellant's arguments his sentence violates his constitutional right to due process. Appellant relies upon *Commonwealth v. Aziz,* 724 A.2d 371 (Pa.Super.1999), *appeal denied,* 563 Pa. 670, 759 A.2d 919 (2000) in arguing that the due process rights of juveniles who are automatically sentenced to life imprisonment without parole are violated "because the juvenile is denied a forum in which to challenge the mandatory life sentence without parole on the basis of their diminished culpability and blameworthiness." Brief for Appellant at 6. However, his reliance upon this case is misplaced as *Aziz* concerned decertification. A panel of this Court determined therein that a provision of the then recently amended Juvenile Act which required juveniles accused of enumerated offenses to appear first in criminal court and then request treatment in the juvenile system to be constitutional. *Id.* at 373.

■ Appellant next contends the evidence at trial had been insufficient to establish he had a specific intent to kill in that "the evidence introduced at trial requires that [sic] fact finder to speculate as to what happened during the course of the incident." Brief for Appellant at 8. Appellant maintains that "there were no eyewitnesses to the incident" and "the case rises or falls on what [Appellant] allegedly said to the Commonwealth witness, Aaron Council." *Id.* at 9. Appellant also asserts that insufficient evidence had been presented at trial "to show that [Appellant] had fully formed an intent to kill and was conscious of that intention." *Id.* at 9–10.

■ Our standard of review of a sufficiency of the evidence claim is well-settled:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley,* 14 A.3d 887, 889–90 (Pa.Super.2011) (quoting *Commonwealth v. Mollett,* 5 A.3d 291, 313 (Pa.Super.2010)).

*Commonwealth v. James,* 2011 WL 2420221, at *2 (Pa.Super. July 17, 2011).

Evidence is sufficient to sustain a conviction for first-degree murder where the Commonwealth establishes that a human being was unlawfully killed; that the accused is responsible for the killing; and that the accused acted with specific intent. 18 Pa.C.S. § 2502(a); *Commonwealth v. Spotz,* 563 Pa. 269, 759 A.2d 1280, 1283 (2000). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or any other kind of willful, deliberate and premeditated killing." 18

Pa.C.S. § 2502(d). The Commonwealth can prove this specific intent to kill from circumstantial evidence. *Commonwealth v. Brown*, 551 Pa. 465, 711 A.2d 444 (1998).

[*Commonwealth v.*] *Tharp, supra* [574 Pa. 202, 830 A.2d 519] at 523–524 [ (2003) ]. Further, specific intent may be formed in an instant. *Commonwealth v. Donnelly*, 439 Pa.Super. 70, 653 A.2d 35 (1995).

*Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa.Super.2010), *appeal denied*, 14 A.3d 826 (Pa.2011).

██ The use of a deadly weapon on a vital part of the victim's body is sufficient to establish the specific intent to kill. *Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025, 1034 (2007), *cert. denied*, 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008). In addition, a panel of this Court has found that evidence had been sufficient to prove an intent to kill where an appellant stabbed the victim twenty-five times in the throat and chest and struck her head nine times with a hammer. *Commonwealth v. Miller*, 897 A.2d 1281, 1285–1286 (Pa.Super.2006), *appeal denied*, 588 Pa. 789, 906 A.2d 1196 (2006).

In the matter *sub judice*, the Commonwealth presented ample evidence that a deadly weapon had been used on vital parts of the victim's body. Dr. Gary Collins, an expert in the field of forensic pathology, testified that wounds and bruises to the victim's head and face area were caused by a blunt object, like a hammer, and affected his brain, a vital organ. In addition, the victim's skull had been fractured in two places, and an injury severe enough to result in a skull fracture is "relatively fatal." N.T., 6/30/2009, at 167–177. Dr. Collins also explained that the victim sustained eleven distinct stab wounds, six of which were to the right side of his chest, and the remaining five stab wounds were to the left side of his chest.

The victim's right lung and heart were punctured as a result of the stabbing. *Id.* at 187–188. Dr. Collins opined the cause of the victim's death was multiple blunt and sharp force injuries. *Id.* at 202.

In his brief, Appellant asserts the evidence had been insufficient to prove he intended and caused the victim's injuries because the jury was left to speculate based upon the testimony of Mr. Aaron Council. Mr. Council testified he and Appellant had been close friends and the two men, along with the victim, sold drugs. N.T., 6/30/09, at 80–81. Mr. Council testified that Appellant admitted he "poked" the victim while the victim and another individual, Keys, were engaged in an altercation concerned money Appellant owed to the victim. *Id.* at 87–91. Appellant told Mr. Council the victim cut him in the face. Appellant also informed Mr. Council he had a hammer and a sword, though Appellant never admitted he hit the victim with the hammer nor did he reveal how many times he stabbed him with the sword. *Id.* at 88, 93–94. Appellant explained he took the victim's gun and that his brother later got rid of it. *Id.* at 95. Appellant told Mr. Council that "it wasn't supposed to go down like that." *Id.* at 96. Appellant was angry with the victim because the victim would not let him stay at his apartment, though Appellant had at one time allowed the victim to stay with him when he had no place to go. *Id.* at 97. The relationship between Appellant and the victim also had soured after a drug deal that had not gone as planned. *Id.* at 98–106. Mr. Council acknowledged he had drug charges pending against him, though no promises were made to him in exchange for his testimony and no one had threatened him in any way to testify. *Id.* at 98.

Appellant fails to mention in his brief the other witnesses who placed him at the scene of the murder and in possession of a

bloody sword. Mr. Michael Russo testified he witnessed Appellant, whom he knew, and Keys splattered with blood leaving the victim's home on September 10, 2007. N.T., 6/29/09, at 74–75, 84. He also noticed the blood-soaked blade of a sword sticking out of Appellant's pocket. *Id.* at 75. Appellant and Mr. Russo made eye contact. *Id.* at 75. Mr. Russo witnessed Keys pressing a dirty shirt or rag against Appellant's face and holding a bag that he had seen a prior evening in the victim's home. Mr. Russo knew the bag was the one in which the victim stored marijuana. *Id.* at 87–88. Rather than pursue Appellant and Keys, Mr. Russo chose to proceed to the victim's apartment at which time he found him dead. *Id.* at 75, 95–98. Mr. Russo remarked the victim's gun was missing, though he was wearing a holster and normally carried it on his person. *Id.* at 98–99.

Ms. Lorraine Hays testified she witnessed two African–American men leaving something in her trash can that day. N.T., 6/30/09, at 7. When she heard Mr. Russo screaming about a stabbing, she took the trash can which was later discovered to contain a bloody sword and t-shirt to the police. *Id.* at 7. Forensic scientist Gregory Vanalstine testified DNA samples taken from the t-shirt found in the trash can and on a stain outside of the victim's home matched that of Appellant. N.T., 7/1/09, at 18–20.

Officer Greg Caputo, the first police officer to arrive on the scene, found the victim amid a massive amount of blood. He also discovered a hammer near the victim's feet, an empty gun holster and a decorative sheath for a sword. N.T., 6/25/09 at 13–16. Officer Adrian Makuch, a member of the crime scene unit, took swabs of blood from both the sword and t-shirt found inside the trash can. N.T., 6/26/09, at 30–31. He also collected the hammer and the sword's sheath a part of the crime scene. *Id.* at 52–55.

The jury, as the finder of fact, after weighing and considering the physical and testimonial evidence the Commonwealth presented during trial, was free to believe all, part or none of it. *See James, supra.* After doing so, it determined Appellant intentionally killed the victim. Upon our review of the record, we find sufficient evidence had been presented from with the jury could properly make such a determination; therefore, this claim is also without merit.

Judgment of sentence affirmed.

MUSMANNO, J. concurs in result.