J-A23009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
NICHOLAS CRUZ : No. 358 EDA 2019

Appeal from the Order Entered January 4, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  MC-51-CR-0022212-2018.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.*

MEMORANDUM BY KUNSELMAN, J.:          **FILED: DECEMBER 29, 2020**

The Commonwealth appeals from the order dismissing the charges filed

against Nicholas Cruz.  We reverse and remand for further proceedings.

The trial court set forth the factual history as follows.

> On August 28, 2018, at approximately 7:00 p.m., Officer
> [Robert] Filler and Officer Toribio conducted a vehicle
> investigation on a 1997 white Chevrolet, on the 2700 block of 6th
> Street, in the city and county of Philadelphia, due to an inoperable
> top brake light. . . . Cruz was the driver of the vehicle and was the
> sole occupant.  When the officers pulled [Cruz] over, they
> conducted a check through the VIN number.  . . . As a result, the
> vehicle came back with temporary tags from Delaware.  [Cruz]
> was not the registered owner of the vehicle and the tags were not
> in his name.
>
> As Officer Filler approached the passenger side with the
> passenger [window] down, he smelled fresh marijuana.  At some
> point, [Cruz] said he was nervous because he smoked marijuana
> earlier that day.  Still, the officers did not order [Cruz] out the

_____

* Retired Senior Judge assigned to the Superior Court.

vehicle. Although the officers smelled fresh marijuana, Officer Filler also testified that [Cruz] was 100% cooperative. There was no evasive or suspicious behavior from [Cruz] when the police pulled him over up until the end of the investigation. The officers saw an ankle bracelet on [Cruz's] ankle and continued to ask [Cruz] questions about his whereabouts and the vehicle in question. Throughout the line of questioning, [Cruz] gave the officers a business card that identified the tire shop he worked for and explained to them that he was in the process of repair [of] the vehicle's tire. The shop was down the street and was owned by [Cruz's] stepfather. Finally, the officers decided to remove [Cruz] from the vehicle and placed him in the police car. On the passenger floorboard, the police officers found a closed black bag, containing a handgun and $13,000. Inside of the bag, the officers found a sales receipt for the handgun that was in someone other than [Cruz's] name. In addition, Officer Filler testified that no personal effects of [Cruz's] were found in the vehicle.

Trial Court Opinion, 7/30/19, at 1-2 (citations to the record omitted).

Following this incident, police arrested Cruz and charged him with violations of the Uniform Firearms Act ("VUFA") under 18 Pa.C.S.A. §§ 6105, 6106, and 6108. The matter proceeded to a preliminary hearing, which the magisterial district court conducted on October 3, 2018. At the conclusion of the hearing, the magisterial district court held that the Commonwealth had not presented sufficient evidence to establish a *prima facie* case, and dismissed the VUFA charges for lack of evidence.

The Commonwealth thereafter filed a motion in the Court of Common Pleas to refile the VUFA charges against Cruz, and also sought to amend the criminal complaint to include a possession of marijuana charge under 35

Pa.C.S.A. § 780-113(a)(31).[1]  At the outset of the hearing, the trial court ruled that the complaint could be amended to include the drug possession charge. The Commonwealth then introduced Officer Filler's body cam video ("BCV") into evidence, which the court viewed during the hearing.  At the conclusion of the hearing, the trial court denied the motion to refile.  The Commonwealth filed a timely notice of appeal.  Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review: "Did the court err in ruling that there was insufficient evidence for a *prima facie* case of three counts of violation of the Uniform Firearms Act and possession of marijuana?"  Commonwealth Brief at 4 (statutory citations omitted).

Our Supreme Court has held that "it is settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary."  ***Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005) (citation omitted).

At the preliminary hearing stage of a criminal prosecution, the Commonwealth's burden is not to prove a defendant's guilt beyond a reasonable doubt; rather, it is merely to put forth a *prima facie* case of the defendant's guilt."  ***Commonwealth v. Huggins***, 836 A.2d 862, 866 (Pa.

---

[1] Incident to the traffic stop, police arrested Cruz and conducted a search of his person, which revealed a small amount of marijuana.

2003). A *prima facie* case exists where the Commonwealth produces evidence to establish "each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." **Id**. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury. **Id**. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case. **Commonwealth v. Nieves**, 876 A.2d 423, 424 (Pa. Super. 2000). The weight and credibility of the evidence is not a factor at this stage. **Commonwealth v. Hilliard**, 172 A.3d 5, 10 (Pa. Super. 2017).

A preliminary hearing is not a mini-trial, and a preliminary hearing judge is not a trier of fact. Thus, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pretrial *prima facie* burden to make out the elements of a charged crime. **Karetny**, 880 A.2d at 513.

We turn first to the firearm charges. Here, the Commonwealth charged Cruz with VUFA offenses under 18 Pa.C.S.A. §§ 6105, 6106 and 6108. The elements of those offenses are as follows. A person is guilty of possessing a firearm by a prohibited person if he possesses a firearm after having been convicted of a crime rendering him ineligible to do so. **See** 18 Pa.C.S.A. §

6105. A person is guilty of carrying a firearm without a license if he carries a firearm in a vehicle without a valid and lawfully issued license. *See id*. at § 6106(a)(1). A person is guilty of carrying a firearm in public if he carries a firearm at any time on a public street without a license to do so. *See id*. at § 6108.

When a firearm is not discovered on a defendant's person, or in their actual possession, the Commonwealth may prove the defendant had constructive possession of the firearm.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820-21 (Pa. Super. 2013) (quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (internal quotation marks and citation omitted)). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013) (citation omitted). Constructive possession cases are fact-sensitive; "a review of case law pertaining to constructive possession indicates the difficulty of drawing bright lines in this area of the law." *Commonwealth v. Stembridge*, 579 A.2d 901, 904 (Pa. Super. 1990).

Evidence that the defendant has been in a vehicle where a firearm is found is not sufficient by itself to prove constructive possession if the firearm is in a location over which the defendant lacks control or there is no evidence that the defendant knew that the firearm was there. **See Commonwealth v. Armstead**, 305 A.2d 1, 2 (Pa. 1973). At the least, the evidence must show that the defendant knew of the existence of the item. **Commonwealth v. Hamm**, 447 A.2d 960, 962 (Pa. Super. 1982). Individually, the circumstances may not be decisive; but, in combination, they may justify an inference that the accused had both the power to control and the intent to exercise that control, which is required to prove constructive possession. **Commonwealth v. Carter**, 450 A.2d 142, 144 (Pa. Super. 1982)

The Commonwealth argues that the trial court failed to view the evidence with all reasonable inferences in favor of the Commonwealth at the preliminary hearing stage, and explicitly and improperly made credibility determinations. The Commonwealth maintains that the evidence established that Cruz was the driver and sole occupant of the vehicle in which a bag, located on the floor just to the right of his leg and within his arm's reach, contained $13,000 and a gun. The Commonwealth argues that all of these factors, viewed together in the light most favorable to the Commonwealth, were at least sufficient to submit to a fact-finder at trial and, thus, to support a *prima facie* case of the VUFA charges.

The Commonwealth further argues that Cruz's intent to exercise conscious control and dominion of the firearm was further corroborated by his statements to police. The Commonwealth points out that, when initially asked by police why he was nervous, Cruz said it was because he had previously smoked marijuana. Commonwealth Brief at 14 (citing N.T., 10/3/18, at 6). However, once Officer Filler recovered the gun and the $13,000 in the black bag, he returned to the police car with the bag, handcuffed Cruz, and asked him, "that's why you're nervous, man?" *Id*. (citing BCV 9:48-10:12). Cruz replied, "yea." *Id*. Cruz also admitted to knowing that there was exactly $13,000 in the bag. *Id*. (citing N.T., 10/3/18, at 8). The Commonwealth maintains that Cruz's admissions demonstrate both consciousness of guilt and knowledge of the bag's contents. The Commonwealth argues that these incriminating statements support a *prima facie* case that the bag and its contents belonged to Cruz, and that he constructively possessed the firearm.

Finally, the Commonwealth asserts that the trial court erred by drawing speculative and defense-friendly inferences that Cruz simply was coming from work at the nearby garage that he and his stepfather owned when he was pulled over by police. The Commonwealth argues that by making inferences in favor of Cruz rather than in favor of the Commonwealth, at the preliminary hearing stage of the proceedings, the lower court committed reversible error.

In its Pa.R.A.P. 1925(a) opinion, the trial court considered the Commonwealth's issue and concluded that it properly denied the motion to

refile charges because the Commonwealth failed to establish that Cruz had actual or constructive possession of the firearm, knowledge of the firearm in the bag, and an intent to exercise control over it. The trial court reasoned as follows.

> Here, there are no personal effects that belong to [Cruz] whatsoever. Moreover, there was no paperwork, on the record, to support a finding that the vehicle was registered to or purchased by [Cruz]. In fact, the Officer Filler testified that the car had temporary Delaware tags on it and [Cruz] was not found to be the registered owner of the vehicle. Additionally, . . . the handgun in this case, was concealed in a black bag on the passenger side. Although [Cruz] was the sole occupant in the vehicle, nothing on the record suggests that he exercised conscious dominion over the handgun. Inside the bag was a sales receipt for the handgun that was in someone other than [Cruz's] name. In our case, it can be inferred that [Cruz] was coming from work, at the shop that he and his stepfather owned, when he was pulled over by police for a Motor Vehicle Violation. The shop was about a block and a half from where [Cruz] was pulled over and [Cruz] stated he was getting the tire fixed. Therefore, [Cruz] could not have had constructive possession of the handgun found in a closed bag on the passenger side of the vehicle.

> * * * *

> The Commonwealth [also] failed to show [Cruz] displayed a consciousness of guilt. While [Cruz] was the sole occupant of the vehicle, the record does not support that he had knowledge of the firearm or that he the intent to control it. . . . [Cruz] was 100% cooperative during the investigation and did not show any evasive behavior. This is in direct contrast with the defendant[] in [***Commonwealth v. Cruz***, 21 A.3d 1247 (Pa. Super. 2011)] . . ., where the police observed [the] defendant[] moving in the direction where the contraband was found.[2] Furthermore,

---

[2] In ***Cruz***, this Court concluded that the evidence was sufficient to establish that the defendant had constructive possession of a gun where he was the only person in the vehicle and the police officer observed him moving toward

> [Cruz], in our case, did not use any evasive tactics such as avoiding being identified by the police, as the defendant did in **Cruz**, by given [*sic*] the officer four or five different names and dates of birth. In fact, [Cruz] in this present case gave the officers a business card that identified the shop he worked for and explained to them what he was doing prior to being stopped. . . . Moreover, [Cruz] did not attempt to flee the scene . . . Based on the totality of circumstances and viewing the evidence in light most favorable to the Commonwealth, there is insufficient evidence to show that the defendant had knowledge of the firearm in the bag and intent to exercise control over said firearm.

Trial Court Opinion, 7/30/19, at 5-6, 8-9 (footnote added).[3]

As noted above, in order to determine whether the Commonwealth has put forth a *prima facie* case, the evidence must be read in the light most favorable to the Commonwealth's case, and all inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be

---

where the gun was found (in a compartment on the passenger side of the vehicle). The defendant also gave the police officer multiple names and birthdates, thereby exhibiting a consciousness of guilt. **See Cruz**, 21 A.3d at 1253.

[3] In reaching its conclusion, the trial court relied on two non-precedential unpublished memorandum decisions by this Court; namely, **Commonwealth v. Talbert**, 121 A.3d 1117 (Pa. Super. 2015) (unpublished memorandum), and **Commonwealth v. Perez**, 159 A.3d 57 (Pa. Super. 2016) (unpublished memorandum). **See** Trial Court Opinion, 7/30/19, at 5-6, 8-9. While Pa.R.A.P. 126 was recently amended to permit trial courts and parties to cite non-precedential unpublished memorandum decisions of this Court for their persuasive value, the amendment pertains to decisions filed **after** May 1, 2019. **See** Order Amending Rule 126 of the Pennsylvania Rules of Appellate Procedure, No 278 (Pa. 2019); **see also** 210 Pa. Code § 65.37. As the two non-precedential unpublished memorandum decisions relied on by the trial court were filed **before** May 2, 2019, they have no persuasive authority.

given effect. *Nieves*, 876 A.2d at 424. Applying this standard, we observe the following based on our independent review of the record.

At the hearing on the motion to refile the charges against Cruz, the Commonwealth presented the notes of testimony from the preliminary hearing, which were incorporated into the trial court record. N.T., 1/4/19, at 5. Notably, the preliminary hearing transcript established that, on the date in question, Cruz was the operator and sole occupant of the vehicle on a street in Philadelphia. N.T., 10/3/18, at 5. The vehicle had temporary Delaware tags on it. *Id*. at 9. Cruz told the officers that he "has a business and that they purchase cars." *Id*. at 27. Cruz further indicated that the vehicle he was driving was a newly purchased vehicle, and that the car was part of the business. *Id*. at 27, 29. The officers ran the VIN number of the vehicle, and discovered that, although Cruz was not the registered owner of the vehicle, the vehicle was in temporary registration status. *Id*. at 8, 13. The VIN report that the officers received did not indicate who applied for the temporary registration status. *Id*. at 8, 13.

When Officer Filler approached the vehicle, he smelled fresh marijuana. *Id*. at 6, 15. A small black bag, described as a "fanny pack," was located on the front floorboard, approximately one foot away from Cruz's right leg, in the direction of the front passenger side of the vehicle. *Id*. at 7-8, 17, 18. Cruz told the officers that the bag contained $13,000. *Id*. at 8. The bag contained exactly $13,000 in cash and a firearm. *Id*. at 6. Cruz did not have a license

to carry the firearm. *Id*. at 8. The Commonwealth also introduced Cruz's criminal record, which reflected that he had a prior conviction which made him ineligible to possess a firearm. *Id*. at 31.

At the refile hearing, the Commonwealth also introduced a body camera video of the traffic stop. N.T., 1/4/19, at 13. The video begins as the officers approached Cruz's vehicle, which Cruz had pulled over in the entrance to a tire lot. *See* BCV, 8/28/18, at 00:01. In the video, Cruz told the officers that he purchased the vehicle in Delaware. *Id*. at 8:14. Cruz further indicated that he temporarily registered the vehicle, and was waiting for a stamp. *Id*. at 10:30. Cruz additionally told the officers that he obtained insurance for the vehicle. *Id*. at 10:50.

Cruz further explained that the vehicle had a "cracked" and "dry rotted" front tire, and that he was coming from his nearby body shop to get the tire changed. *Id*. at 8:42; 10:03; 11:03; 11:08. Cruz indicated that, due to the condition of the tire, he had to fill the tire with air each morning. *Id*. at 11:11.

Cruz told police that he was nervous, and police observed that Cruz was extremely nervous. *Id*. at 13:16. When asked by police why he was so nervous, Cruz initially indicated that it was because he smoked a blunt earlier in the day. *Id*. After Officer Filler placed Cruz in the back of the police Cruiser, he went back to the vehicle and, while standing outside the driver's side of the vehicle, reached over the driver's seat and picked up the black bag. *Id*. at 14:32. When Officer Filler opened the bag, he found the gun and the

$13,000 in cash. *Id*. Officer Filler returned to the police cruiser with the bag and asked Cruz if the bag was the cause of his nervousness. *Id*. at 17:31. Cruz responded in the affirmative. *Id*.

Our review of the evidence produced at the hearings, viewed in the light most favorable to the Commonwealth and accepted as true at this juncture, leads us to conclude that the Commonwealth presented sufficient evidence to establish a *prima facie* case as to the VUFA charges filed against Cruz.

Cruz was the driver and sole occupant of the vehicle where the firearm was found. Cruz told police that he purchased the vehicle, obtained insurance for the vehicle, and that he was waiting for the registration process to be completed. Police confirmed that the ownership of the vehicle was in a temporary status, but did not have access to information regarding the identity of the individual who applied for temporary ownership status. Cruz told officers that the vehicle had a damaged tire which he had to fill up with air every morning. These facts support an inference that Cruz, in fact, owned or at least maintained control over the vehicle.

The evidence also supported an inference that Cruz had knowledge of the firearm located in the car. Cruz told police that the bag contained $13,000 in cash. Police confirmed that the bag contained exactly $13,000 in cash. Based on Cruz's knowledge of the exact amount of currency located within the bag, the Commonwealth was entitled to an inference that Cruz owned or

possessed the bag, and that he had knowledge of the other contents of the bag, including the firearm.

Further, the evidence supported an inference that Cruz exercised control over the firearm. The firearm was positioned near Cruz's feet, making it easily within his reach. Where contraband has been found within the reach of a defendant, as it was here, our Court has concluded that there was sufficient evidence to find constructive possession. **See Commonwealth v. Samuels**, 340 A.2d 880 (Pa. Super. 1975); **see also Commonwealth v. Ferguson**, 331 A.2d 856 (Pa. Super. 1974) (holding that the location of contraband in an area usually accessible only to a defendant may lead to the inference that he placed it there or knew of its presence if others did so); **Commonwealth v. Kirkland**, 831 A.2d 607 (Pa. Super. 2003) (holding sufficient evidence established defendant's constructive possession of contraband found in vehicle; even though defendant did not own vehicle and arresting officers did not see defendant in vehicle, where defendant's wife told officers defendant had arrived in vehicle, defendant possessed keys to vehicle, and contraband was located in area defendant could access).

Finally, Cruz's demeanor during the stop supports an inference that he constructively possessed the firearm. Cruz was visibly nervous, and ultimately attributed the cause of his nervousness to the contents of the bag. These facts suggest consciousness of guilt. **See Commonwealth v. Hughes**, 865 A.2d 761, 792 (Pa. 2004) (holding that "[t]he conduct of an accused following

a crime, including 'manifestations of mental distress,' is admissible as tending to show guilt") (quoting, in part, **Commonwealth v. Homeyer**, 94 A.2d 743, 747 (Pa. 1953) (holding that "mental distress, fear at the time of or just before or just after discovery of the crime" are indicators of guilt)); **see also Commonwealth v. Cruz**, 21 A.3d 1247, 1253 (Pa. Super. 2011); **Commonwealth v. Donelly**, 653 A.2d 35, 37 (Pa. Super. 1995).

Under the totality of these circumstances, viewed in the light most favorable to the Commonwealth and accepted as true at the preliminary hearing stage of the proceedings, we conclude that the Commonwealth presented sufficient evidence to establish a *prima facie* case as to the VUFA charges filed against Cruz.

We further conclude that, in arriving at its determination, the trial court failed to view the evidence in the light most favorable to the Commonwealth, and instead, viewed the evidence and all reasonable inferences therefrom in favor of Cruz.[4]   The trial court also considered matters wholly irrelevant to

---

[4] For example, the absence of documentation establishing that Cruz was the registered owner of the vehicle on the date of the traffic stop, and the absence of Cruz's personal effects in the vehicle (*i.e.*, bills, mail) should not have been viewed in the light most favorable to Cruz, particularly where Cruz repeatedly indicated to police that he owned and insured the vehicle, and that it was temporarily registered to him.

the charges in question.[5] Accordingly, we conclude that the trial court erred in denying the Commonwealth's request to refile the VUFA charges.

We turn next to the Commonwealth's claim that the trial court erred in denying its motion to refile the drug possession charge against Cruz. Relevantly, a person is guilty of possessing a small amount of marijuana if he possesses thirty grams or less of marijuana for personal use. *See* 35 P.S. § 780-113(a)(31).

At the refile hearing, the Commonwealth established that a search of Cruz's person incident to his arrest revealed a bag of marijuana on his person. N.T., 1/4/19, at 11-12. The parties stipulated that the amount of marijuana was approximately one gram. *See id*. at 13.

The Commonwealth contends that the trial court erred in denying the motion to refile with respect to the drug possession charge on the basis that the court failed to conduct a *prima facie* analysis, and instead focused on theoretical and premature suppression issues. According to the Commonwealth, the trial court appeared to conclude that the search of the vehicle was impermissible under our Supreme Court's plurality decision in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (adopting the federal automobile exception to the warrant requirement and permitting officers to

---

[5] For example, whether Cruz was the owner of the firearm was irrelevant, as he was charged with VUFA offenses related to possession of a firearm, not ownership. Further, where Cruz was coming from or going to was also irrelevant to the VUFA charges in question.

search a vehicle when there is probable cause to do so). The Commonwealth argues that such a legal analysis is irrelevant to the sufficiency of a *prima facie* case at a preliminary hearing because a defendant can later move for suppression in a motion before the trial court. The Commonwealth asserts that a preliminary hearing court may not simply exclude certain evidence from the *prima facie* record by speculating about its future admissibility.

Finally, the Commonwealth contends that the trial court improperly made a credibility finding when it concluded that Officer Filler could not have reasonably smelled fresh marijuana emanating from Cruz's vehicle based on the small amount of marijuana that was sealed in a plastic bag. The Commonwealth asserts that the trial court committed reversible error by making a credibility determination at the preliminary hearing stage. According to the Commonwealth, because police recovered the marijuana from Cruz's person after his arrest, the Commonwealth established a *prima facie* case for his actual possession of marijuana.

The trial court undertook an extensive explanation of the factual and legal underpinnings at issue in **Gary**. The court then provided the following analysis.

> Here, when the police officers smelled marijuana emanating from the vehicle, they did not immediately conduct a search. Instead, the police officers went on a fishing expedition in attempts to elicit possible criminal statements. They continued to ask [Cruz] questions about his whereabouts, and therefore, did not base their arrest on the smell alone. The police officers went beyond the scope of **Gary** and should not have continued to question [Cruz]. Furthermore, it was not until after numerous

- 16 -

preliminary hearings that the Commonwealth decided to amend [Cruz's] charges to include possession of marijuana. It is also crucial to note that the amount of marijuana recovered was approximately one gram, sealed in a sandwich bag. To state that [Officer Filler] could smell one gram of marijuana emanating from outside the vehicle, calls to question the credibility of the officer. Therefore, this Court finds that [Cruz] cannot be held for the charge of possession.

Trial Court Opinion, 7/30/19, at 10.

As noted above, at the preliminary hearing stage of criminal proceedings, the question is not whether there is sufficient **admissible** evidence to prove the defendant guilty beyond a reasonable doubt; rather, the question is whether the prosecution must be dismissed because there is **nothing** to indicate that the defendant is connected with a crime. **See Commonwealth v. Rick**, 366 A.2d 302, 303-04 (Pa. Super. 1976). This Court has further held that:

> [I]n light of the critical nature of the preliminary hearing in assuring that the Commonwealth has a legal basis for prosecuting a person, the better course may be for the Commonwealth, whenever possible, to produce evidence to establish its *prima facie* case that would also be admissible at trial. However, there is no requirement that the Commonwealth do so in all instances.

**See Commonwealth v. Troop**, 571 A.2d 1084, 1088 (Pa. Super. 1990); **see also Commonwealth v. Wojdak**, 466 A.2d 991, 995 (Pa. 1983) (holding that the *prima facie* standard does not require that the Commonwealth prove the elements of the crime beyond a reasonable doubt nor that evidence is available that would prove each element at trial beyond a reasonable doubt).

Moreover, our Rules of Criminal Procedure contemplate that suppression issues are to be addressed **after** the preliminary hearing stage of the proceedings. Rule 578 provides that all pretrial requests for relief shall be included in one omnibus pretrial motion, and identifies a motion to suppress as a type of relief appropriate for the omnibus pretrial motion. **See** Pa.R.Crim.P. 578. Rule 579 provides that "the omnibus pretrial motion for relief shall be filed and served within 30 days **after** arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion." Pa.R.Crim.P. 579(A) (emphasis added).

Here, if Cruz believed that the officers did not have probable cause to arrest him and search his vehicle, he could have filed a motion to suppress on that basis after the charges had been bound over for court. It was not the role of the trial court, on a motion to refile charges, to determine suppression issues at the preliminary hearing phase of the proceedings.

Further, as we have explained, the weight and credibility of the evidence is not a factor at the preliminary hearing stage. **Hilliard**, 172 A.3d at 10. Thus, the trial court had no discretion in ascertaining whether Officer Filler's testimony regarding his ability to smell fresh marijuana upon approaching Cruz's vehicle was credible. **Karetny**, 880 A.2d at 513.

For these reasons, we conclude that the trial court committed reversible error in denying the Commonwealth's motion to refile the charge of possession of a small amount of marijuana.

Based on the foregoing, we reverse the order of the trial court, and remand for further proceedings consistent with this memorandum.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/20